**Tamara COULBERN Appellant–Defendant Below,**

v.

**STATE of Indiana, Appellee–Plaintiff Below.**

No. 34A02–9504–CR–182.

Court of Appeals of Indiana.

Oct. 5, 1995.

Mark R. Ryan, John C. Wood, Kokomo, for appellant.

Pamela Carter, Attorney General, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

ROBERTSON, Judge.

Tamara Coulbern brings this interlocutory appeal of the trial court's denial of her motion to dismiss the criminal prosecution against her for several counts of drug dealing. Coulbern argues that the jeopardy assessment (and collection) of the Indiana Controlled Substance Excise Tax [CSET] in the amount of $845.53 by the Indiana Department of Revenue prohibit the criminal prosecution for drug dealing under principles of double jeopardy. We agree.

We need not devote extensive analysis to the present case because its ultimate disposition will depend upon the anticipated decision or decisions of our supreme court in *Clifft v. Indiana Department of State Revenue* (1994), Ind.Tax, 641 N.E.2d 682; *Hall v. Indiana Department of Revenue* (1994), Ind.Tax, 641 N.E.2d 694; *Bailey v. Indiana Department of Revenue* (1994), Ind.Tax, 641 N.E.2d 695; *Hayse v. Indiana Department of Revenue* (1994), Ind.Tax, 641 N.E.2d 698;

*Whitt v. State* (1995), Ind.App., 645 N.E.2d 677; and *Collins v. State* (1995), Ind.App., 645 N.E.2d 1089. Our supreme court has granted transfer in all of these cases, however, no written opinion or opinions have yet been issued.

The above cases have all relied on *Department of Revenue v. Kurth Ranch* (1994), —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767, in holding (or noting) that Indiana's CSET amounts to punishment that, under principles of double jeopardy, may not be imposed in a subsequent proceeding after a criminal prosecution. The present case is distinguishable from those before it only in that the CSET was assessed against (and collected from) Coulbern before the inception of the present criminal prosecution. However, as noted by Justice Scalia in his dissent in *Kurth Ranch*, when there is a constitutional prohibition on multiple punishments, the order of the criminal punishment or civil sanction cannot possibly make any difference. —— U.S. at ——, 114 S.Ct. at 1958.

Based on the authority set out above, we hold that the jeopardy assessment and collection of the CSET against Coulbern prohibits the criminal prosecution against her for drug dealing. Therefore, we must reverse and remand with instructions that Coulbern's motion to dismiss be granted.

Reversed.

BAKER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the majority's conclusion that jeopardy assessment and collection of the Controlled Substance Excise Tax ("CSET") against Coulbern prohibits subsequent criminal prosecution for two reasons:

1. IND.CODE § 6–7–3–9 (1993) specifically states that payment of the Controlled Substance Excise Tax does not make the buyer immune from criminal prosecution.

2. The Indiana Controlled Substance Excise Tax is not punishment for double jeopardy purposes.

First, the Indiana legislature clearly intended to impose the CSET civil sanction in addition to the criminal drug offense punishment. The act specifically states that payment of the CSET does not make the buyer immune from criminal prosecution. I.C. § 6–7–3–9. Furthermore, several of the accompanying provisions support this intention. *See, e.g.,* I.C. §§ 6–7–3–7 to –9.

When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *trans. denied.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Not only does the act clearly validate subsequent criminal prosecution after payment of the tax, but the accompanying provisions support this determination. One provision provides that an arrest or criminal conviction is not needed for the tax to become due. I.C. § 6–7–3–8. A second provision reveals one is not relieved of the duty to pay the tax even if the person delivers a controlled substance to a law enforcement officer. I.C. § 6–7–3–7. Two additional provisions provide safeguards which protect the identity of the payor and ensure that information gained from payment does not lead to criminal prosecution. I.C. §§ 6–7–3–8, –9.

These provisions illustrate that the legislature clearly meant for the CSET and underlying drug offenses to work independently. We must construe statutes to prevent absurdity and to give effect to the legislature's probable intent. *Anderson v. State* (1995), Ind.App., 649 N.E.2d 1060, 1063. The legislature did not intend the State to choose between enforcing the CSET or the criminal drug laws. Moreover, the legislature could not have intended that by paying the tax assessment the defendant would be insulated from a prison sentence. This would be an absurd construction of legislative intent as the CSET is clearly not meant to reduce the penalty for drug crimes. *Id.*

Next, we must determine whether or not such a statute is constitutional. Our law is clear that once a statute is declared to be unconstitutional, it is to be regarded as if it had never been enacted. *R.L.G. v. T.L.E.* (1983), Ind.App., 454 N.E.2d 1268, 1271. However, every enactment of our General Assembly stands before the court cloaked with a presumption of constitutionality. *Eddy v. McGinnis* (1988), Ind., 523 N.E.2d 737, 738. The Fifth Amendment of the United States Constitution [1] and art. I, § 14 of the Indiana Constitution [2] prohibit a person from being put in jeopardy twice for the same offense. The Indiana Supreme Court has stated that the history of the Indiana Constitution does not reveal any intent to apply provisions against double jeopardy outside the context of criminal prosecutions. *Eddy, supra,* at 739. The court explained:

> The documented history of the Indiana double jeopardy clause reveals that its purpose is the regulation of criminal proceedings. Our constitutional prohibition against double jeopardy originated in the Indiana Constitution of 1816, which provided '[t]hat in all criminal prosecutions, the accused ... shall not be ... twice put in jeopardy for the same offence.' Ind. Const. of 1816 art. I, § 13. This provision was included in the Indiana Constitution of 1851 upon the recommendation of the committee on the rights and privileges of the inhabitants of the State. Sections four, five, six and seven of Report No. 20 became sections 13, 14, 15 and 17 of Article I of the 1851 Constitution, *Convention Journal 1850,* 187 (1936). Covering such matters as double jeopardy, self-incrimination and bail, these provisions were treated by the convention as 'sections, referring to the manner in which criminals shall be tried.' 2 *Debates of the Indiana Convention* 1389 (1935).

---

**1.** The Fifth Amendment provides "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

**2.** The Indiana Constitution states "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14.

*Id.* at 739–40. Thus, a historical analysis of Indiana's Constitution supports my position that double jeopardy should not be invoked when there is a civil sanction and a criminal prosecution.

Moreover, Indiana courts have routinely not invoked double jeopardy where the defendant is convicted of a failure to pay the CSET contemporaneous with a conviction for an underlying drug offense. *Charley v. State* (1995), Ind.App., 651 N.E.2d 300, 304; *Anderson v. State, supra,* at 1062; *Whitt v. State* (1995), Ind.App., 645 N.E.2d 677, 679, *trans. pending; Clifft v. Indiana Dept. of State Revenue* (1994), Ind.Tax., 641 N.E.2d 682, 693, *trans. pending; Hall v. Indiana Dept. of State Revenue* (1994), Ind.Tax., 641 N.E.2d 694, 695, *trans. pending; Bailey v. Indiana Dept. of State Revenue* (1994), Ind. Tax., 641 N.E.2d 695, 698, *trans. pending; Hayse v. Indiana Dept. of State Revenue* (1994), Ind.Tax., 641 N.E.2d 698, 699, *trans. pending.*[3] Thus, collection of the CSET must be imposed during the first prosecution or not at all. *Id.*

The facts presented in Coulbern's appeal are distinguishable from the facts presented in the above cases because the civil penalty (the CSET) was imposed and collected *prior to* the inception of criminal prosecution. As the Majority notes, the sequence of the sanctions should not be the dispositive issue in determining whether or not double jeopardy attached. Slip op. at 2. However, I believe it defies logic to determine that the tax is valid when it is imposed contemporaneously with the criminal charges, but invalid when it is imposed prior or subsequent to criminal prosecution. The sequence of punishment should not be the key element in determining whether there is double jeopardy. Instead, I would conclude that because double jeopardy does not attach when a defendant is contemporaneously taxed and criminally charged, it should not attach when the tax is imposed prior or subsequent to criminal prosecution.[4]

The U.S. Supreme Court has held that Congress may impose both a criminal and a civil sanction in respect to the same act or omission; the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938). The majority has adopted Coulbern's argument that the CSET was punishment and that to criminally prosecute her after payment of the tax would amount to successive punishment, a violation of double jeopardy.[5] I disagree.[6]

The Indiana cases rely on the U.S. Supreme Court's majority decision in *Kurth Ranch,* in which the Court held that a tax imposed under Montana's Dangerous Drug Act was punishment for the purpose of double jeopardy analysis. *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. ——, ——, 114 S.Ct. 1937, 1948, 128 L.Ed.2d 767 (5–4 decision). The Majority admits that prior to that decision, the U.S. Supreme Court has never found that a tax violated the Double Jeopardy Clause. *Id.* at —— – ——, 114 S.Ct. at 1945–46. Whereas fines, penalties, and forfeitures are readily characterized as sanctions, taxes are typically different because they are usually motivated by revenue-

---

**3.** *But see Collins v. State* (1995), Ind.App., 645 N.E.2d 1089, 1095–96, *trans. pending* (the offense of failure to pay the substance excise tax on cocaine was an "included offense" of dealing in cocaine so that conviction and sentencing for both violated double jeopardy).

**4.** In order to make this finding consistent, the Indiana Supreme Court would need to overturn *Collins, supra,* where the Indiana Court of Appeals determined that the offense of failure to pay the substance excise tax on cocaine was an "included offense" of dealing in cocaine so that conviction and sentencing for both crimes violated double jeopardy.

    *But see Charley, supra,* at 304–05, the court found that possession of cocaine within 1,000

feet of school property is not a lesser included offense of failure to pay the CSET.

**5.** Coulbern cites to the U.S. Supreme Court holding in *Kurth Ranch, infra,* and the Indiana Tax Court's holding in *Clifft, supra,* to support this contention. However, it is important to note that both of those cases specifically refused to address the question of whether an ostensibly civil proceeding designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character. *Clifft, supra,* at 693, n. 16; *Kurth Ranch, supra,* at 1947, n. 21.

**6.** In so doing, I expressly reject the contrary conclusion of the Indiana Tax Court in *Clifft, supra.*

raising rather than punitive purposes. *Id.* at ——, 114 S.Ct. at 1946. For the reasons stated below, I believe Indiana's CSET is remedial and thus distinguishable from the tax at issue in *Kurth Ranch.*

The *Kurth Ranch* Court points to several features of the Montana tax which set it apart from most taxes. Under the Montana tax, the taxpayer has no obligation to pay any tax unless and until he is arrested. *Id.* at ——, 114 S.Ct. at 1942. Moreover, it is strictly a property tax on possession of goods that no longer exist and that the taxpayer never lawfully possessed. This has an unmistakable punitive character for double jeopardy purposes. *Id.* at ——, 114 S.Ct. at 1948. The high rate of taxation and obvious deterrent purpose were factors consistent with the punitive character of the tax. *Id.* at ——, 114 S.Ct. at 1946.

Indiana's CSET is substantially different. As noted above, the Montana taxpayer has no obligation to pay any tax until he is arrested. *Id.* at ——, 114 S.Ct. at 1942. In Indiana, the tax is due when a person receives delivery of, takes possession of, or manufactures a controlled substance in violation of state or federal law. I.C. § 6–7–3–8. However, an arrest or criminal conviction is not necessary. On the contrary, there are specific safeguards in place to ensure that information gained from payment will not lead to a criminal prosecution. I.C. §§ 6–7–3–8, –9. The identity of the payor may not be revealed at the time of payment and confidential information received by the department cannot be used to initiate criminal prosecution. *Id.*

Next, the Indiana CSET differs from the Montana tax because the CSET is an excise tax imposed on the commission of an act, not on the property itself. On the other hand, the Montana tax is a property tax. *See Kurth Ranch, supra,* at ——, 114 S.Ct. at 1948. "Excise tax" is defined as:

> A tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.... A tax on the manufacture, sale, or use of goods or on the carrying on of an occupation or activity, or a tax on the transfer of property.

*Black's Law Dictionary* 563 (6th ed. 1990). Therefore, the CSET is distinguishable from Montana's tax which requires the crime of possession of an illegal substance. *Kurth Ranch, supra,* at —— – ——, 114 S.Ct. at 1941–42.

Finally, neither a high rate of taxation nor an obvious deterrent purpose automatically marks the tax a form of punishment. *Id.* at ——, 114 S.Ct. at 1946. Montana's tax was remarkably high—the assessment was more than eight times the drug's market value. *Id.* While it is true that Indiana's tax rate is high,[7] this factor is not dispositive. Such a tax may be remedial in character and therefore not punishment for double jeopardy purposes, so long as it reimburses the government for its actual costs arising from the defendant's criminal conduct. *Id.* at ——, 114 S.Ct. at 1945.

However, it is most difficult to determine an amount that would sufficiently remedy the government. In fact, the U.S. Supreme Court has acknowledged that the precise amount of the government's damages and costs may be difficult, if not impossible, to ascertain. *U.S. v. Halper* (1989), 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487. The rate of the tax is the legislature's estimation of a fair tax burden placed on an industry that is otherwise not taxed.[8] No taxes or fees are collected from those en-

**7.** The amount of Indiana's controlled substance excise tax is ten dollars ($10) for each gram of a schedule V controlled substance, twenty dollars ($20) for each gram of a schedule IV controlled substance, and forty dollars ($40) for each gram of a schedule I, II, or III controlled substance. I.C. § 6–7–3–6. The court in *Clifft* argues that Indiana's tax is considerably higher than Montana's tax on marijuana. *Clifft, supra,* at 692, n. 15. However, the court fails to take into consid-eration the rates imposed on controlled substances within other schedules.

**8.** The monies collected under Indiana's CSET are distributed as follows: to local law enforcement agencies to conduct criminal investigations and train law enforcement personnel; to a fund to pay for costs and administration of the CSET; to people as awards for information leading to the collection of a tax liability; and to the state drug free communities fund. I.C. § 6–7–3–16.

gaged in the illegal drug business. Thus, an entire business goes without taxation. The legislature likely decided these rates were appropriate because the illegal drug business is a large, untaxed private industry, which the state is unable to tax efficiently. Therefore, it is reasonable to conclude that the legislature imposed the CSET for the legitimate purpose of raising revenue from the very profitable underground drug business.

Because payment of the CSET does not make the payor immune from criminal prosecution, and because the CSET is not punishment for double jeopardy purposes, I would affirm the trial court's decision denying Coulbern's motion to dismiss.